# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RACHEL C. SUGALSKI,<br>          Plaintiff,<br><br>v.<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY,<br>          Defendant. | CIVIL ACTION<br>NO. 14-40015-TSH |

## MEMORANDUM AND ORDER OF DECISION
## MARCH 30, 2015

**HILLMAN, D.J.**

### Background

Rachel C. Sugalski ("Plaintiff" or "Sugalski") filed a complaint against The Paul Revere Life Insurance Company ("Paul Revere") in the Massachusetts Superior Court alleging claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), violation of ERISA, §502(a)(1)(B) (Count III), violation of the Massachusetts Consumer Protection Statute ("Chapter93A"), Mass.Gen.L. ch. 93A (Count IV), and violation of Mass.Gen.L. ch. 176D, §3(9)(Count V). Sugalski also seeks a declaratory judgment (Count VI). The action was removed to this Court on the grounds that this Court has original federal question jurisdiction because Sugalski has alleged an ERISA violation. Paul Revere has filed a

counterclaim against Sugalski seeking restitution pursuant to 29 U.S.C. § 1132(a)(3), for an overpayment of benefits.

This Memorandum of Decision and Order addresses The Paul Revere Life Insurance Company's Motion For Partial Summary Judgment And To Strike Jury Claim (Docket No. 16) and Plaintiff's Cross-Motion For Summary Judgment (Docket No. 32). For the reasons set forth below, Paul Revere's motion for partial summary judgment and to strike jury claim is <u>*allowed*</u> and Sugalski's motion for summary judgment is <u>*denied*</u>.

## **Standard of Review**

"Cases that concern benefit determinations under an ERISA plan … are not typical cases when it comes to summary judgment. When an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits or construe the plan's terms, the district court must uphold the administrator's decision unless it is 'arbitrary, capricious, or an abuse of discretion.' In such cases, 'summary judgment is simply a vehicle for deciding the issue" and "the non-moving party is not entitled to the usual inferences in its favor.' *D & H Therapy Assoc., LLC v. Boston Mut. Life Ins. Co*., 640 F.3d 27, 34 (1st Cir. 2011)(internal citations and citations to quoted cases omitted). However, where the plan does not give the plan administrator authority to determine benefit eligibility or construe the terms of the plan, review is *de novo*. The presumption is that the administrator has no discretion, and the burden is on the administrator to show that the plan gives it discretionary authority in order for discretionary review to apply. *Geiger v. Hartford Life Ins. Co.*, 348 F. Supp. 2d 1097, 1105-06 (E.D. Cal. 2004). Paul Revere has established that it has discretion to determine benefit eligibility and interpret plan provisions, *see Aff. Of Chris Foster* (Docket No. 43)(Administrative Record)*( "Ad.Rec."), Vol. III,* at p. 567, and, therefore, this Court's review is discretionary. One last caveat-- the Court reviews *de novo*

the plan administrator's interpretation of non-plan documents used to determine eligibility. *Hannington v. Sun Life and Health Ins.*, 711 F.3d 226, 231 (1st Cir. 2013).

"[A]n ERISA benefit determination is within the discretion of the plan administrator so long as it is 'reasoned and supported by substantial evidence.' ... review of whether a plan administrator abused its discretion does not require that [the court] determine either the "best reading" of the ERISA plan or how [it] would read the plan de novo. [Additionally,] the doctrine of contra proferentem does not apply to review of an ERISA plan construction advanced by an administrator given authority to construe the plan. … Challenges to benefit determinations in this circuit have typically involved the application of contested facts to uncontested plan terms. … [Where] the relevant plan terms [are] 'clear and unambiguous' … the 'devil is in the details' of applying the facts to those terms." *D&H Therapy Assoc., LLC.*, 64 F.3d at 35 (internal citations and citations to quoted cases omitted). "In some cases, an inherent conflict of interest exists; that is, the plan administrator (typically, an insurer) not only evaluates claims but also underwrites the plan. [Paul Revere] has such a dual role. This inherent conflict may be weighed as a factor in assessing the reasonableness of [Paul Reveres] decision, but its existence does not perforce alter [the Court's] standard of review." *Colby v. Union Sec. Ins. Co. & Mgmt. Co. for Merrimack Anesthesia Associates Long Term Disability Plan*, 705 F.3d 58, 62 (1st Cir. 2013).

### Facts Relevant To Both Motions

Abraham W. Haddad, DMD, P.C. ("Haddad") established a benefit plan effective April 1, 1994. The plan name is the "Abraham W. Haddad, DMD, P.C. Group Long-Term Disability Insurance Plan" (the "Plan"). The Plan, which is funded by a group disability insurance policy issued by Paul Revere, provides disability benefits for employees of Haddad. Haddad paid 100% of the premium for the disability coverage provided by the Plan and is the Plan Sponsor

3

and Plan Administrator. The Summary Plan Description contains information related to ERISA, including the Plan Name, Plan Sponsor, Plan Administrator, and Claims Administrator[1]. The Summary Plan Description provides a description of how to file a claim pursuant to ERISA and how to exercise the right to an administrative appeal.

On June 2, 2009, Sugalski signed a Disability Payment Options/Reimbursement Agreement in which she chose the option of having her disability benefits paid with "no reduction for amounts received by other sources until a final determination of [her] eligibility to receive those benefits is made." Furthermore, she acknowledged that if she receives an overpayment as the result of receiving any other benefits from sources specified in the Plan, she would refund the same. *Ad.Rec.*, *Vol. III,* at p. 373.

Sugalski was injured in October 2008, when she fell off a stationary bike while exercising at a health club. In April 2009, she submitted a claim for disability benefits. At the time her disability began, Sugalski was an employee of Haddad. Paul Revere approved her claim and began paying her benefits in the amount of $3,203.40 per month. That amount was reduced to $1,538.00 per month when Sugalski started receiving disability payments from the Social Security Administration. In February 2009, Ms. Sugalski filed a lawsuit against the health club and two bike manufacturers. In September 2009, Unum sent Sugalski's counsel a letter asking to be kept apprised of the status of the litigation because the policy had a provision that could allow her benefits to be reduced by certain income benefits she received. Counsel agreed to keep Unum informed.

Around June 2013, Sugalski's personal injury case went to trial. Some counts were tried to the jury and others to the trial judge; claims against one defendant went to the jury. In

---

[1] The Claims Administrator is Unum Group ("Unum"). Since it makes no difference to the outcome of this case, I will at times use Unum and Paul Revere interchangeably.

accordance with Massachusetts law, the jury was instructed that there could be no recovery for her loss of income; instead, she was limited to recovery reasonable and necessary medical expenses, physical and emotional pain and suffering, diminishment of earning capacity and physical scarring. The jury returned a verdict in Sugalski's favor for $260,000. Sugalski settled with two other defendants in the lawsuit as a "hedge" against a low or adverse jury verdict. The settlement amounts were kept confidential because the judge still had portions of the case under consideration. None of the hedge settlements made any specific apportionment of amounts for reasonable and necessary medical expenses, physical and emotional pain and suffering, loss of earning capacity, physical scarring or prejudgment interest. At the conclusion of the trial, the jury verdict together with prejudgment interest did not exceed the amounts of the hedge settlements and Sugalski did not receive any additional funds from the jury verdict. The trial judge decided the claims before him in favor of the Defendants. The net recovery to Sugalski after payment of attorney's fees, expert witness fees and a substantial lien from her medical insurer was $225,000.

On October 2, 2013, a representative of Unum contacted Sugalski's counsel and requested information concerning the results of the trial. Counsel informed Unum that Sugalski had settled with two defendants during trial and that neither of the settlements, nor the jury's verdict made any specific apportionment for damages. Unum thereafter demanded $85,576.09 from the recovery. The amount was determined based on the reduction of benefit provisions of the Plan and the information provided to Unum by Sugalski. Sugalski replied in a letter stating that there was no basis for concluding she had been overpaid benefits and that the only possible basis for claiming an overpayment under the policy did not apply. On May 29, 2014, Paul Revere sent Sugalski a letter in which it set forth its calculation of the overpayment amount.

5

After revising its figures based on new information about the amount received by Sugalski in the settlement, Paul Revere determined that the overpayment amount was $84,588.08 and that as of that date, after deduction of disability benefits due to Sugalski, the overpayment amount outstanding was $74,595.68.

## Discussion

Paul Revere seeks summary judgment on Counts I, II, IV, V and VI of the Complaint because these state law claims are preempted by ERISA. Furthermore, Paul Revere seeks to strike Sugalski's jury claim on the grounds that there is no right to trial by jury in ERISA cases. Sugalski seeks summary judgment on her ERISA claim and on Paul Revere's Counter Claim for overpayment of benefits.

### *Paul Revere's Motion For Partial Summary Judgment: ERISA Preemption*

There is no dispute that the Plan is an employee welfare benefit plan subject to ERISA. ERISA preempts any state law claims that relate to an employee benefit plan. "'[A] cause of action 'relates to' an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action ... [as well as] where the damages must be calculated using the terms of an ERISA plan.' " A law is preempted 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.' Where 'the very same conduct' underlies both the state law claim and the ERISA claim, that overlap 'suggests that the state law claim is an alternative mechanism for obtaining ERISA plan benefits,' and the state law claim is preempted. *Guerra-Delgado v. Popular, Inc.*, 774 F.3d 776, 781 (1st Cir. 2014)(internal citations and citations to quoted authorities omitted).

While not conceding that her state law claims are preempted, Sugalski chose not to make any substantive argument in opposition to Paul Revere's motion. Instead, she simply argues that

6

the issue could have been addressed by way of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). In the alternative, she argues that Paul Revere would not have been prejudiced by waiting to raise the issue at a later date when it suffered actual prejudice in the litigation due to the presence of the state law claims-- such as being forced to conduct discovery outside of that relevant to her ERISA claim.

All of Sugalski's state law claims are based on her assertion that Paul Revere failed to act in accordance with the express terms of the Plan when it ceased paying her benefits thereunder and wrongfully sought to recover an alleged overpayment. For that reason, it is not surprising that her counsel opted not to expend any significant time or resources opposing the motion. In any event, I find that Sugalski's state law claims require the Court to interpret the Plan in order to determine liability *and* damages and further, that the same conduct underlies both Sugalski's state law claims and her ERISA claim. Therefore, Sugalski's state law claims are preempted and Paul Revere's motion for partial summary judgment is allowed.[2]

*Sugalski's Motion For Summary Judgment*

*Additional Facts: Relevant Plan Provisions*

With respect to benefit reductions, the Plan provides, in relevant part, as follows:

**BENEFIT REDUCTIONS**

While an Employee is Disabled, he may be eligible for benefits from other sources. If so, We reduce our benefit by the amount of such other benefits paid or payable.

Listed below are other income sources that will reduce our benefit.

1. Social Security benefits, including: Primary Social Security and Family Social Security benefits received by an Employee or an Employee's dependents because of the Employee's Disability or retirement. If an Employee fails to apply for

---

[2] Because the only claim of Sugalski's that survives is her ERISA claim, for which she is not entitled to a trial by jury, Paul Revere's motion to strike her jury claim is allowed.

>Social Security benefits, We determine the amount he was eligible to receive, and, for the purposes of this insurance, he will be considered to receive that amount.
>A general Social Security cost of living adjustment that takes effect after an Employee's Incurred Date of Disability is not used to reduce the Employee's benefit.
>
>2. Other disability benefits from:
>> a. Statutory Disability ("Cash Sickness") Plans, where applicable;
>> b. Canadian Federal or Provincial Disability Benefits;
>> c. Railroad Retirement Act Disability Benefits;
>> d. Disability benefits with which We are required by law to integrate.
>> 3. Workers' Compensation benefits;
>> 4. That portion of any sick pay or other salary continuation
>
>> ….
>
>8. Loss of Time awards or settlements involving liability insurance or court actions; or
>
>> ….
>
>If any of these benefits, except a retirement benefit, is paid in other than a monthly sum, We divide the amount paid into equal monthly amounts in order to reduce the monthly benefit. The number of monthly amounts depends on the length of time the benefit award covers. If no length of time is stated in the benefit award, We divide the amount paid into sixty equal payments. If any of these benefits is paid on a retroactive basis, We may adjust our monthly payments in order to offset any overpayment which results.

*Aff. Of Chris Foster* (Docket No. 19), at *Ex. A*,

### Whether Paul Revere Properly Withheld Benefits To Offset Loss Of Time Award

Sugalski takes the position that the money which she received from the jury verdict and settlement of her personal injury claim did not include any amount for lost income and therefore, Paul Revere was not entitled to recoup any amount for so-called "Loss of Time" under the Plan. She also challenges Paul Revere's interpretation of the Loss of Time provision as including amounts she received from her personal injury litigation because it is clear that this provision is intended to include only wages or other income such as social security benefits or those obtained from sources such as workers compensation. She further argues that Paul Revere's interpretation

of the Plan to allow for reduction in benefits if any of three events occur, *i.e.*, a Loss of Time award, a settlement involving liability insurance, *o*r a court action is arbitrary and capricious because that interpretation allows it to reduce benefits where the claimant obtains a verdict in *any* court action, regardless of whether that court action relates to the claimant's receipt of Plan benefits. Paul Revere, on the other hand, argues that it has not interpreted the Plan broadly as Sugalski suggests; it has interpreted it much more narrowly to include only loss of time awards, settlements involving liability insurance, or court actions related to the injury which resulted in the claimant's disability. As to her assertion that the award/settlement she received in the litigation was not apportioned and therefore, cannot result in a benefit reduction, Paul Revere points out that Sugalski made the decision not to apportion the settlement. Had she wanted to preclude portions of the settlement from being subject to the benefit offset, she should have expressly structured the settlement accordingly.

*Whether Paul Revere's Interpretation Of The Plan Was Arbitrary and Capricious*

The Plan expressly provides for reduction of benefits where the claimant is awarded social security benefits, worker's compensation, disability benefits under the Railroad Retirement Act and similar other types income. It is axiomatic that if the Loss of Time provision relied on by Paul Revere was intended only to apply to these and the other similar types of benefits expressly listed in the Plan (as suggested by Sugalski), then the provision would be superfluous -- construction of a contract term that would render it meaningless is disfavored. On the other hand, taking Sugalski's argument to its logical conclusion, the enumerated classes of "Other Income Benefits" listed in the Plan are primarily statutorily based claims and other claims providing for no-fault recovery, whereas her recovery is the result of a fault-based personal injury, common law tort action. The court in *Baxter v. Life Assur. Co. of Canada*, 833 F.Supp.2d

9

833 (N.D.Ill. 2011) found that the insurer's decision to offset the claimant's long term disability benefits by a portion of his tort settlement was arbitrary and capricious where the insurer relied on two general provisions which made references to expressly defined "Other Benefits," where such "Other Benefits" all arose from statutes and were based on no-fault law.[3] *Id.*, at 841. However, the *Baxter* court stated that had that plan included a broader provision which allowed for reduction of amounts received from a third-party "by judgment, settlement or otherwise," or comparable terms, the offset would have been appropriate. *Id.,* at 843.

The Loss of Time provision in this case is certainly broader than the plan provisions which the *Baxter* court held did not permit offset for personal injury recovery. Additionally, the First Circuit has upheld the enforceability of reimbursement provisions such as the one at issue in this case:

> A *primary* purpose of ERISA is to ensure the integrity and primacy of the written plans ... [so that] the plain language of an ERISA plan should be given its literal and natural meaning.' Against this plain legislative purpose, if the ERISA plan expressly provides that its members are obligated to reimburse the plan for 'the value of services provided, arranged, or paid for,' we do not think it can be considered 'unfair' to require plan members to abide by the agreement.

*Harris v. Harvard Pilgrim Health Care, Inc.*, 208 F.3d 274, 279 (1st Cir. 2000)(internal citation to quoted case omitted). Accordingly, I do not find that Paul Revere's interpretation of the Plan was arbitrary and capricious.

Little discussion is warranted as to Sugalski's apportionment argument. If the Court were to accept her position, then when settling a third-party tort action, a claimant could avoid reimbursement of benefits by requesting that a settlement be structured to provide for no recovery for lost income, despite the fact that the actual intent of the parties was that a portion of

---

[3] The provisions allowed for offset for any amount for which the claimant was eligible under "any other act or law of like intent" and "any amount "[a]ny amount … receive[d] due to income replacement or lost wages paid … by compromise, settlement or other method as a result of a claim for any Other Income Benefit" *Baxter*, 833 F.Supp.2d at 841.

10

the recovery recompense the claimant for such damages. At the same time, I do not find that Paul Revere has unfettered discretion to determine how much of Sugalski's recovery is attributable to lost income which would reduce the disability benefits to which she is otherwise entitled under the Plan. Paul Revere's calculation of the alleged overpayment to which it is entitled raises significant questions which the Court is unable to resolve on this record. In order to decide whether Paul Revere's determination of the amount of Sugalski's recovery subject to reimbursement is arbitrary and capricious, the Court will require additional information as to how Paul Revere made that determination, as well as additional legal and factual analysis as to how that determination is justified by the terms of the Plan.

For the reasons set forth above, Sugalski's motion for summary judgment is denied. The Court shall set a status conference to set a schedule for limited discovery and the briefing any further dispositive motions and/or trial.

## **Conclusion**

It is hereby Ordered that:

1. The Paul Revere Life Insurance Company's Motion For Partial Summary Judgment And To Strike Jury Claim (Docket No. 16) is ***allowed***; and

2. Plaintiff's Cross-Motion For Summary Judgment (Docket No. 32) is ***denied***.

/s/ ***Timothy S. Hillman***
TIMOTHY S. HILLMAN
DISTRICT JUDGE