UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| RACHEL C. SUGALSKI,<br>        Plaintiff,<br><br>v.<br><br>THE PAUL REVERE LIFE INSURANCE COMPANY,<br>        Defendant. | CIVIL ACTION<br>NO. 14-40015-TSH |

## ORDER OF JUDGMENT
### August 24, 2016

**HILLMAN, D.J.**

### Background

Rachel C. Sugalski ("Sugalski") filed a complaint against The Paul Revere Life Insurance Company ("Paul Revere") in the Massachusetts Superior Court alleging claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), violation of the Employment Retirement Security Act of 1974, as amended ("ERISA"), §502(a)(1)(B) (Count III), violation of the Massachusetts Consumer Protection Statute ("Chapter93A"), Mass.Gen.L. ch. 93A (Count IV), and violation of Mass.Gen.L. ch. 176D, §3(9)(Count V). Sugalski also seeks a declaratory judgment (Count VI).  Paul Revere has filed a counterclaim against Sugalski seeking restitution for an alleged overpayment of benefits to Sugalski under the Abraham W. Haddad, DMD, P.C. Group Long-Term Disability Insurance Policy No. G-47338 ("Plan"), which is governed by ERISA, 29 U.S.C. §1001 *et seq.*

I have issued two previous decisions in this case. In the first, I held that Sugalski's state law claims are pre-empted and therefore, the only remaining claim is her ERISA claim (Count III).  *See Mem. of Dec. and Order*, dated March 30, 2015 (Docket No. 49). Additionally, I determined that Paul Revere has discretionary authority under the Plan and that its interpretation of the Plan requiring reimbursement of benefits where the claimant receives a personal injury settlement was not arbitrary and capricious.  I aslo found that on the record presented, I could not determine whether Paul Revere's calculation of the amount of the benefit overpayment to Sugalski because of her settlement of a personal injury lawsuit was arbitrary and capricious. *See id.*  In the second decision, I determined that Paul Revere's calculation of the overpayment amount was arbitrary and capricious. The case was remanded to Paul Revere with an instruction to recalculate the amount of the benefit overpayment to Sugalski, if any, after allocating to pain and suffering a reasonable portion of the net settlement she received in the personal injury lawsuit. *See Mem. And Order of Dec.*, dated May 27, 2016 (Docket No. 87)("May 2016 Order"). On July 11, 2016, Paul Revere filed its Notice of Decision on Remand (Docket No. 88) to which it attached a copy of the Unum Group's[1] decision recalculating the overpayment amount, in accordance with my May 2016 Order.  *See id.*, at *Ex. A* ("Decision")[2].  After review of the Decision, judgment shall enter for Paul Revere as provided below.

## Supplemental Facts

After the Court issued its May 2016 Order, Sugalski's attorneys provided additional information to Paul Revere/Unum to be considered in recalculating the amount of the benefit

---

[1] Unum Group ("Unum") provides claim handling for polices issued by Paul Revere, including the policy at issue in this case.

[2] Unum sent a copy of the Decision to Sugalski's attorney on July 8, 2016.  Sugalski has not filed any response to the Decision, that is, she has not disputed Unum's recalculation of the overpayment, nor has she challenged any of the factual statements made by Unum in its Decision.

overpayment, if any, she received as the result of her settlement of a personal injury lawsuit.[3] More specifically, Sugalski provided: (1) copies of the relevant settlement agreement and release between she and the equipment manufacturer/re-manufacturer; (2) the release and indemnity agreement between she and the fitness club; and (3) photographs and x-rays of her injuries. The settlement agreements did not allocate any amount of the settlement to specific categories of damages. Nonetheless, in the letter accompanying the aforementioned materials, Sugalski's attorneys take the position that equal amounts of the settlement should be attributed to pain and suffering, scarring and lost earning capacity. *See Decision*, at p. 2. "[I] in the interest of resolving this matter," Unum agreed that it would allocate the net settlement equally to pain and suffering, and lost earning capacity.

In accordance with its initial calculation, Unum assumed a net settlement amount of $157,286.[4] Unum then allocated half of that amount ($78,643) to lost income and half ($78,643) to pain and suffering. Unum refused to allocate any part of the net settlement to scarring because (1) Sugalski did not provide any information from which it could be determined that was a significant portion her damages or that any amount was attributable to scarring in the settlement; and (2) the Court's May 2016 Order did not instruct Paul Revere to allocate any amount to scarring.

In accordance with the Plan, Unum then divided the portion of the net settlement amount allocated to last earning capacity ($78,643) into sixty equal payments beginning October 2008 (the date of onset of her disability), which equates to $1,310.72 per month. Sugalski's long-term

---

[3] Sugalski suffered serious injuries while working out on a stationary bicycle at a fitness club when the equipment suddenly malfunctioned. She subsequently sued the fitness club and two companies involved in the manufacture of the stationary bicycle.

[4] A detailed explanation as to how Unum arrived at this figure is provided in the May 2016 Order. As noted by Unum, I did not find that Unum's determination of the net settlement amount was arbitrary or capricious.

disability benefit for that period was $1,665.40 per month.  Unum determined that the maximum benefit payment to which Sugalski was entitled was $354.68 per month and therefore, the offset/overpayment amount is $70,735.20.  Paul Revere has applied $53,292.80 in long-term benefits due Sugalski towards the overpayment, leaving a balance of $17,442.40.  Under the Plan, Sugalski's entitlement to benefits will end in January 2017.  At that time, Paul Revere will have recouped $63,340.71 leaving a balance of $7,394.49.  Paul Revere has agreed to waive the balance that will become due in January 2017.[5]

## Discussion

I am troubled by two aspects of Unum's recalculation of the benefits overpayment amount.  First, using the figures in the administrative record submitted by Paul Revere and the figures, which Unum used in its original calculation, as proffered by Paul Revere, the Court is at a loss to determine how Unum arrived at $70,735.20 as the overpayment amount.  In its statement of material facts Paul Revere indicated that during ***most*** of the relevant period (October 2008 through October 2013), Sugalski's monthly benefits was $1665.40 ***and*** that it paid her total benefits of $89,879.42[6].  After offsetting the amount of the net settlement properly allocated to lost earnings ($1,310.72 per month), I calculate the amount of benefits to which she was entitled under the Plan during this period as $21,281.40 ($354.68 x 60 months), which would result in an overpayment amount of $68,598.02.  Because Unum's calculation of

---

[5] I the May 2016 Order, I raised the issue of whether Paul Revere will be entitled to collect the balance of the overpayment due after January 2017 in light of the Supreme Court's decision in *Montanile v. Board of Trustees of Nat. Elevator Ind. Health Benefit Plan*, 136 S.Ct. 651 (2016).  Unum suggests that Paul Revere could pursue collection efforts from Sugalski within the parameters set forth by the Supreme Court in that case.  Because Unum has represented that it would not attempt to recover the remaining balance (if any), the Court need not address whether *Montanile* would bar such collection efforts..

[6] In the May 2016 Order, I stated that $85,576.09 was the amount of benefits which had been paid to Ms. Sugalski. This amount reflects the fact that in the parties' cross-motions for summary judgment, they cited to different parts of the record in support of the figures they quoted. On further review of the record, I have determined that the $85,576.90 figure was not the amount of benefits paid Ms. Sugalski during this period, but instead was the initial amount that Unum informed Ms. Sugalski it was entitled to recover from her.

$70,735.20 is reasonably close to the Court's and therefore, is likely attributable to difference in the rounding up or down of the numbers used and/or how the calculation was performed. For that reason, and because the calculation is unchallenged, it will be accepted by the Court.

More problematic is my finding that Unum has taken much too narrow a view of my instructions on remand when it suggests that my May 2016 Order did not permit it to allocate any amount to permanent scarring suffered by Sugalski. While it is true that I did not specifically require Unum to allocate a portion of the net settlement to account for any permanent physical scarring suffered by Sugalski, I also did not prevent it from doing so. In the decision, Unum states that Sugalski supplemented the record to include photographs of her left hand and wrist. Unum's failure to review those photographs and determine whether any portion of the net settlement should be allocated to scarring was arbitrary and capricious. Little can be gained and much time, cost and resources would be wasted by remanding this matter to Unum to further consider this issue. I find that seven and one-half percent (7.5%) of the net settlement amount ($11,796.45) should have been allocated to scarring. Therefore, I find that the overpayment amount is $58,938.75.[7]

In the May 2016 Order, I noted that the issue of whether to award attorney's fees remained under advisement. I do not find that an award of attorney's fees is appropriate in this case.

---

[7] Admittedly, I have oversimplified the calculation. However, any difference between this number and the number that would be obtained carrying out the more complicated calculation is minimal.

**Conclusion**

It is hereby ordered that:

Judgment shall enter in favor of Defendant, Paul Revere Insurance Company, on the claims of Plaintiff, Rachel C. Sugalski. Judgment shall enter in favor of the Defendant on its counterclaim in the amount of $58,938.75[8].

                                                              */s/ Timothy S. Hillman*
                                                              TIMOTHY S. HILLMAN
                                                              DISTRICT JUDGE

---

[8] As noted above, as of the date Unum issued the Decision, Defendant had applied $53,292.80 in long-term benefits due Plaintiff towards the overpayment. In accordance with this Order of Judgment, the balance due is now $5,645.95 less any additional long-term benefit payments which have been applied towards the overpayment since the date of the Decision.